**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

United States of America,

v.                                                      Case No. 1:24-cr-340-MLB

Wayne Alford, et al.,

               Defendants.

_____/

## <u>ORDER</u>

For the reasons set forth below, the Court adopts in part the Magistrate Judge's Report and Recommendation (Dkt. 249) and denies Defendant Arnold's Motions to Sever and to Suppress (Dkts. 168, 231).

### I.    Background

A grand jury indicted Defendants Wayne Alford, Matthew Freeman, Latasha Baker, and Jahiem Arnold, charging them with conspiring to distribute methamphetamine and—along with Defendants Carlos Pearson and Jayden Barnes—two counts of conspiring to commit murder for hire. (Dkt. 118, Counts 1-3.) The United States explains that Defendant Alford (while being held at the Fulton County jail) conspired

1

with Defendant Baker (a guard at the jail) and Defendants Freeman and Arnold to distribute controlled substances. (Dkt. 241 at 2.) After jail guards seized some of their drugs, that group conspired with Defendants Pearson and Barnes to kill the guards. (*Id.*)

On November 16, 2023, law enforcement saw Defendant Arnold in a parking lot at the jail reserved for jail guards. (Dkt. 241 at 3.) When officers approached, Defendant Arnold fled in his car, drove at speeds exceeding 90 miles an hour, crashed, and tried to run away on foot. (*Id.*) Officers used a dog to detain him. (*Id.*) They then took Defendant Arnold to a hospital for medical treatment. (Dkt. 218 at 30.)

In his car, officers found a gun and a four-pack of Apple AirTags with two missing tags. That evening, two jail guards found AirTags attached to their cars. From the serial numbers on those AirTags and information found on Defendant Arnold's phone, law enforcement concluded Defendant Arnold had placed the AirTags on the officer's cars to track their movements. (*Id.*)

Sometime that night, Task Force Officer Kettle (who was with the Fulton County Sheriff's office) called FBI Special Agent Joshua Berrios (a civil rights investigator) to tell him a Fulton County Deputy

(Defendant Baker) had been "caught up in some type of potential smuggling," the Deputy was in police custody, and Defendant Arnold was in custody at the hospital. (Dkt. 218 at 67-69, 74-76.) Special Agent Berrios went to the hospital to interview Defendant Arnold as part of his investigation into the Fulton County Deputy. (*Id.*) After his indictment in this case, Defendant Arnold moved to sever his trial from the trial of his codefendants and to suppress his statements to Special Agent Berrios. (Dkt. 168, 231.)

At an evidentiary hearing before the Magistrate Judge, Special Agent Berrios testified that he read Defendant Arnold a *Miranda* warning before speaking with him, that Task Force Officer Kettle was present while he did so, and that Defendant Arnold said he was willing to waive his rights and speak with the agent. (Dkt. 249 at 73-74.) The agent explained he did not have Defendant Arnold execute a *Miranda* form because he expected Defendant Arnold to be a witness for him against the Fulton County Deputy and he does "not necessarily" have witnesses sign *Miranda* forms in order to "limit down the paper trail." (*Id.* at 74-75.) For the same reasons, he did not record the interview. (*Id.* at 77.) The agent admitted he told Defendant Arnold he wanted to speak

3

with him, that he wanted to see if Defendant Arnold "would cooperate, be a witness," that he "was not interviewing [Defendant Arnold] as a subject of an investigation," and that he wanted Defendant Arnold to cooperate by providing some information about corruption in Fulton County. (Dkt. 218 at 86-87.)

He testified that Defendant Arnold seemed "clear and coherent and just relaxed generally," that he provided "concise feedback" to the questions asked, and that—while he was aware that Defendant Arnold had been in a car accident and received medical care—"the look in his eye, his demeanor, his tone . . . he seemed all there for lack of a better term." (*Id.* at 71-72.) While the agent did not ask about his medical condition or whether he was taking any medication, the agent talked to Defendant Arnold to determine whether he might be under the influence, did not think Defendant Arnold was high or drunk, and concluded Defendant Arnold was "clear of mind and thought." (*Id.* at 97, 108.)

Defendant Arnold testified, answering a single question—whether he recalled being read his *Miranda* rights when interviewed in the hospital. (*Id.* at 123.) He said he did not. (*Id.*) He also provided a declaration, repeating that assertion and further averring that he did not

4

recall making any statement to law enforcement.  (Dkt. 231-4.)

The Magistrate Judge issued a report and recommendation saying this Court should deny Defendant Arnold's motion to sever but grant his motion to suppress.  (Dkt. 249.)  Both parties filed objections.  (Dkt. 252, 254.)

## II.   Standard of Review

28 U.S.C. § 636(b)(1) requires district courts to "make a de novo determination of those portions of [an R&R] to which objection is made." Any such objection "must specifically identify the portions of the [R&R] to which objection is made and the specific basis for objection." *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 694 (11th Cir. 2020)[1]; *see United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009) ("[A] party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with.").   "Frivolous, conclusive, or general objections need not be

---

[1] The Court recognizes *McCullars* is unpublished and not binding.  The Court cites it and other unpublished cases as instructive, nonetheless. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988).

"It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). And, in most cases, "[a] party failing to object to [an R&R] waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *McGriff v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 469, 472 (11th Cir. 2016). Ultimately, whether or not objections are filed, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III.  Defendant Arnold's Motion to Sever

Defendant Arnold moves to sever his trial from the trial of his codefendants, arguing that—if tried alone—Defendant Alford would testify he never told Defendant Arnold about the murder-for-hire or drug-trafficking conspiracies. (Dkt. 168 at 7-8.)

The Court applies a two-step analysis in considering severance. First, the Court determines whether initial joinder of defendants or

charges was proper under Rule 8. *United States v. Gabay*, 923 F.2d 1536, 1539 (11th Cir. 1991). Second, the Court determines whether, despite proper joinder, prejudice to the defendant nevertheless warrants severance under Rule 14. *United States v. Chavez*, 584 F.3d 1354, 1359-60 (11th Cir. 2009). A defendant who moves to sever carries the "heavy burden of demonstrating [that] 'compelling prejudice' would result from a joint trial." *United States v. Lopez*, 649 F.3d 1222, 1234 (11th Cir. 2011). When—as in this case—a defendant argues severance is necessary to permit exculpatory testimony from a codefendant, the defendant must show: "(1) a bona fide need for the testimony; (2) the substance of the desired testimony; (3) the exculpatory nature and effect of the desired testimony; and (4) that the codefendant will indeed testify at a separate trial." *United States v. Machado*, 804 F.2d 1537, 1544 (11th Cir. 1986). To meet these requirements, a defendant must present "specific exonerative facts" beyond the mere assertion that a codefendant would testify the defendant did not commit the crime. *United States v. Sawyer*, 799 F.2d 1494, 1505 (11th Cir. 1986). "Once the defendant makes that threshold showing, the trial court must then: (1) examine the significance of the testimony in relation to the defendant's theory of the

7

case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider judicial administration and economy; and (4) give weight to the timeliness of the motion." *Id.*

In this case, Defendant Arnold presented no evidence supporting his claim that Defendant Alford would testify on his behalf.  His lawyer simply stated Defendant Alford would do so because "there is no reason [Defendant Alford] would not testify if he is tried before" Defendant Arnold.  (Dkt. 168 at 8.)  The Magistrate Judge concluded the lawyer's unsupported assertion was not enough to show Defendant Alford would offer exculpatory testimony.  (Dkt. 249 at 13.)  In his objections, Defendant Arnold suggests the Magistrate Judge adopted a "requirement" that a defendant provide an affidavit from the proposed witness or that person's lawyer that the witness will provide exculpatory information.  (Dkt. 252 at 6.)  The Magistrate Judge never imposed that requirement.  She noted that Defendant Arnold has the burden of establishing Defendant Alford's willingness to provide exculpatory testimony and that Defendant Arnold offered neither a statement from Defendant Alford's lawyer nor an affidavit from Defendant Alford to suggest he would.  (*Id.*)  She was merely pointing out two ways he could

8

have approached his burden but failed to do so.  She imposed no affidavit requirement.

And Defendant Arnold does not suggest the Magistrate Judge overlooked any evidence in determining he failed to meet his burden of showing Defendant Alford's willingness to exculpate him.  Instead, he suggests the Court should eliminate his burden of proof by simply accepting his lawyer's unsupported supposition that Defendant Alford would agree to testify and would provide the proffered testimony.  He says that, in the absence of any evidence, "[t]he Court may still find Defendant Arnold's showing sufficient, and severance mandatory, particularly in this rare circumstance where the need for Mr. Alford's testimony is so clear and obvious."  (Dkt. 252 at 8.)  The Court cannot simply accept counsel's unsupported assertion.  Rule 14 requires evidence, not speculation.  *Sawyer*, 799 F.2d at 1505.  And that makes sense.  Accepting counsel's unsupported assertion would effectively require severance whenever a defendant claims a codefendant might provide favorable testimony.  That result would swallow the strong preference for joint trials in conspiracy cases.

9

The Court adopts the Magistrate Judge's recommendation and **DENIES** Defendant Arnold's motion to sever (Dkt. 168).[2]

## IV.   Motion to Suppress

The admissibility of a defendant's post–arrest statement depends on a multi-step inquiry—whether the law enforcement officers complied with the requirements of *Miranda v. Arizona,* whether the arrestee agreed to waive his or her rights and speak with the officer, and whether the arrestee did that knowingly and voluntarily.  *United States v. Jones,* 32 F.3d 1512, 1516 (11th Cir. 1994).  The first two elements are often straightforward because a signed *Miranda* waiver usually establishes both.  But the final step is more nuanced.  Even in the presence of a signed form, the United States cannot introduce a suspect's statement

---

[2] The Magistrate Judge separately concluded Defendant Arnold had not shown severance necessary to avoid prejudice because the evidence against Defendant Arnold does not rest solely on one witness such that Defendant Alford's alleged testimony would exonerate Defendant Arnold. (Dkt. 249 at 13.)  Defendant Arnold objects to that conclusion, claiming the United States intends to argue Defendant Alford told Defendant Arnold about the plan, thus making Defendant Alford's proffered testimony exculpatory.  (Dkt. 252 at 2-6.)  Because Defendant Arnold effectively concedes he has not presented evidence either that Defendant Alford would agree to testify or that he would provide exculpatory testimony, the Court declines to address this separate basis for denying Defendant's motion to sever.

unless it shows the suspect voluntarily, knowingly, and intelligently waived his or her privilege against self-incrimination and his or her right to counsel. *United States v. Lall*, 607 F.3d 1277, 1282 (11th Cir. 2010). The voluntary element requires the United States to establish that the suspect relinquished his or her right to remain silent as "a free and deliberate choice" rather than because of "intimidation, coercion, or deception." *Id.* The knowing and intelligent element requires the United States to establish the suspect did so "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 1283. In assessing whether a suspect acted voluntarily, knowingly, and intelligently, a court considers the totality of the circumstances. *United States v. Farley*, 607 F.3d 1294, 1327 (11th Cir. 2010). As part of this, a court can consider the defendant's education and intelligence, any advice provided about constitutional rights, the length of the detention, and the use of promises, threats, punishment, or deprivation. *United States v. Bernal-Benitez*, 594 F.3d 1303, 1319 (11th Cir. 2010). The prosecution must prove an effective waiver by a preponderance of the evidence. *Missouri v. Seibert*, 542 U.S. 600, 608 n.1 (2004).

11

The Magistrate Judge concluded that—despite a lack of documentary evidence like a signed *Miranda* form or a recorded waiver—Special Agent Berrios presented credible evidence that he notified Defendant Arnold of his *Miranda* rights and that Defendant Arnold agreed to speak with the agents. (Dkt. 14-15.)  Defendant does not object to that conclusion, and the Court adopts it as supported by the agent's testimony.

At the evidentiary hearing, Special Agent Berrios testified that, when he first spoke with Defendant Arnold he told Defendant Arnold that he wanted to speak with him, that he wanted to see if Defendant Arnold "would cooperate, be a witness," that he "was not interviewing [Defendant Arnold] as a subject of an investigation," and that he wanted Defendant Arnold to cooperate by providing some information about corruption in Fulton County.  (Dkt. 218 at 86-87.)  TFO Kettle was present at the time and identified as an officer with Fulton County.  (*Id.* at 87.)  In essence, the interviewing officers told Defendant Arnold "he was not the subject of [their] investigation but was being spoken to as merely a witness."  (*Id.* at 88.)  The Magistrate Judge concluded that— even though the agent read Defendant Arnold his *Miranda* rights—the

12

agent's subsequent statements that he considered Defendant Arnold a witness countermanded that warning.  She thus recommends the Court grant Defendant Arnold's motion to suppress on the grounds the United States failed to show by a preponderance of the evidence that Defendant Arnold knowingly and voluntarily waived his *Miranda* rights.

The United States objects, arguing the Magistrate Judge misapplied a series of Eleventh Circuit cases finding an agent's assurances that a suspect's statements won't hurt the suspect countermanded the *Miranda* warning enough to render a subsequent statement involuntary.  (Dkt. 254 at 5.)  As part of this, the United States seeks to distinguish one of the cases on which the Magistrate Judge relied—*United States v. Beale,* 921 F.2d 1412 (11th Cir. 1991)—on the grounds that, while Defendant Arnold waived his rights *before* Special Agent Berrios told him he was only being interviewed as a witness, the officers in *Beale* made the misleading statements before the waiver.  (Dkt. 254 at 5.)  Chronology was not the defining issue in *Beale*.  The United States acknowledges two other cases the Magistrate Judge cited—*Hart v. Att'y General of Florida*, 323 F.3d 884 (11th Cir. 2003) and *United States v. Lall*, 607 F.3d 1277 (11th Cir. 2010)—involve the same chronology as

13

this case.  (Dkt. 254 at 5-6.)  But the United States distinguishes those cases by claiming there was a "change in circumstance" that countermanded the *Miranda* waiver (in one case a defendant's request for clarification of his rights and in the other a change in location from one room to the other).  (*Id.*)  But those distinctions did not make a difference to the Eleventh Circuit's analysis.

While disagreeing with those arguments, the Court agrees with the United States's argument that the Eleventh Circuit's more recent decision in *United States v. Morgan*, 143 F.4th 1264 (11th Cir. 2025)—a case neither party cited to the Magistrate Judge—requires denial of Defendant Arnold's motion to suppress.  In that case, the Eleventh Circuit reviewed the same three cases the Magistrate Judge discussed and explained police can render a suspect's statement involuntary when "the deception goes directly to the nature of the suspect's rights and the consequences of waiving them." *Morgan*, 143 F.4th at 1277 (citing *United States v. Farley*, 607 F.3d 1294, 1328–29 (11th Cir. 2010)).[3]  The Court of Appeals further explained this occurs "in those rare circumstances in

---

[3] The police can also do so when "deception took the form of a coercive threat." Morgan, 143 F.4th at 1277.  No one argues that applies here.

which an officer's deception 'interfere[s] with the defendant's ability to understand the nature of his [*Miranda*] rights and the consequences of abandoning them.'" *Id.* (citing *Farley*, 607 F.3d at 1330).

As the Court in *Morgan* explained, in *Beale, Hart,* and *Lall* the officers' statements effectively countermanded the *Miranda* warnings by—in one way or the other—saying the suspects could speak without fear their statements would be used against them.  In *Beale*, for example, the agents countermanded the *Miranda* warning's cautionary advice that the suspect's statements could be used against him by saying the form "would not hurt him."  *Beale*, 921 F.2d at 1435.  In *Hart*, the agents told the suspect that, while a lawyer would tell him not to answer incriminating statements, "honestly would not hurt him."  *Hart*, 323 F.3d at 894.   That statement "contradicted the *Miranda* warning that anything he said could be used against him" because the phrase "honesty will not hurt you" is simply not compatible with the phrase "anything you say can be used against you in court."  *Id.*  Similarly, in *Lall*, the agents countermanded the *Miranda* warning by telling the suspect that "anything he said would not be used to prosecute him" and that he "would

15

not be charged for any statements or evidence collected on the night of the robbery." *Lall*, 607 F.3d at 1287.

Each of those cases involved an officer telling the suspect, explicitly or implicitly, that the *Miranda* warning did not mean what it said. In contrast to those situations, an officer does not countermand *Miranda* warnings by lying to a suspect about the charges the officer is investigating, so long as the officer makes no "promise that questioning would be limited to that subject" or gives the suspect "any assurance that statements relating to other crimes would not be used against" the suspect. *Farley*, 607 F.3d at 1327.

Eleventh Circuit precedent thus distinguishes between deception about a suspect's rights and deception about the scope of an investigation. Only the former invalidates a *Miranda* waiver. Special Agent Berrios's statements may have misled Defendant Arnold about the scope of the investigation, saying Defendant Arnold was not a "subject" of the investigation. But he said nothing to countermand the *Miranda* warning that Defendant Arnold's statements could be used against him. The agent never told Defendant Arnold his statements would not hurt him, that Defendant Arnold would not be charged, or anything like that. Nor

16

did he suggest Defendant Arnold's statements would be inadmissible, off the record, or immune from future prosecution. His comments concerned only Defendant Arnold's perceived role in the investigation—not the legal consequences of speaking. The agent warned Defendant Arnold that his statements could be used against him (in the *Miranda* warning) and that Defendant Arnold was not a subject of the investigation (in his subsequent statement). Defendant Arnold thus could have simultaneously understood two propositions: that he was not then a target of Special Agent Berrios's investigation and that anything he said could nevertheless be used against him. Because those propositions are entirely compatible, Agent Berrios's later comments did not countermand or contradict the *Miranda* warning.[4]

---

[4] The United States also argues the rule recognized in *Morgan* cannot apply here since Special Agent Berrios's statement was technically true. The Court rejects that argument for two reasons. First, a statement can be deceptive even though true. Second, whether he was honest is perhaps debatable since he was interviewing Defendant Arnold in the presence of TFO Kettle who was investigating Defendant Arnold. The United States also places great weight on the fact Special Agent Berrios (if anything) misled Defendant Arnold about a fact (the scope of the investigation) and the Eleventh Circuit has said factual misrepresentations "generally are not enough" to invalidate a waiver. *Morgan*, 143 F.4th at 1277 (citing *Lall*, 607 F.3d at 1285). The Court does not consider the factual nature of the misstatement decisive here because the distinction is merely a "general" rule, not a categorically prohibition. Instead, the Court focuses

The Court thus sustains the United States's objection to the Magistrate Judge's report and recommendation regarding the motion to suppress, does not adopt that recommendation, concludes the United States proved by a preponderance of the evidence that Defendant Arnold voluntarily, knowingly, and intelligently waived his *Miranda* rights, and **DENIES** Defendant Arnold's motion to suppress (Dkt. 231).

## V.   Conclusion

The Court **OVERRULES** Defendant Arnold's Objections (Dkts. 252), **SUSTAINS** the United States's Objections (Dkt. 254), **ADOPTS IN PART** the Magistrate Judge's Report and Recommendation (Dkt. 249), and **DENIES** Defendant Arnold's Motions to Sever and to Suppress (Dkts. 168, 231).  The Court **GRANTS** Defendant Arnold's Motion to Seal (Dkt. 230).

**SO ORDERED** this 7th day of August, 2026.



MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

---

on the content of the alleged misrepresentation and whether it countermanded the *Miranda* warning.